## BOYD v. KENNEDY.

1. Coupon bonds of a corporation, issued under legislative authority to raise money on a credit, if they contain words of negotiability, are negotiable the same as promissory notes, and the title of the purchaser of such a security for a valuable consideration, has all the qualities of the title of the holder of ordinary commercial paper, under the same circumstances.
2. Such bond issued and put in the market, with a blank for the name of the payee, has the same quality of negotiability as a bond, complete when issued. The authority for a subsequent *bona fide* holder writing his own name in the blank space, and making the instrument complete, is implied from the act of the obligors in putting it in circulation in that condition.
3. A bond issued by the county of H., under legislative authority, payable to . . . . . . or . . . . . . was feloniously stolen from the owners. In an action of replevin by the real owner, it was held that he could not recover the bond of a holder who had subsequently bought it in the market, *bona fide*, for a valuable consideration.

On rule to show cause why a new trial should not be granted.

Boyd sued Kennedy in replevin, for the possession of a bond made by the board of chosen freeholders of the county of Hudson, bearing date September 1st, 1865, issued under an act of the legislature, approved February 28th, 1865. (*Acts of* 1875, *p.* 163.)

In the bond it is recited that the board of chosen freeholders of the county of Hudson, for and in behalf of the inhabitants of the said county, acknowledge themselves indebted, for value received, to . . . . . or . . . . . in the sum of one thousand dollars, to be paid to the said . . . . . or . . . . . at the county collector's office, on September 1st, 1885, with interest thereon at seven per cent., payable semi-annually, on surrender of the coupons annexed. The interest coupons annexed are payable semi-annually to the holders thereof, on, &c.

The act authorized the issue of bonds for an amount sufficient to pay a bounty of $400 to each volunteer substitute or drafted man to fill the quota of the county. It prescribed that the bonds should be in sums of $500 and $1000, payable at a period not less than twenty years, with coupons attached, for interest semi-annually, and might be payable to bearer or order. It further provided that the bonds might, in the discretion of the board, be used or applied to indemnify any city or township in the county which had paid or secured bounties to its volunteers, substitutes or drafted men.

The bond in question was allotted to the township of South Bergen, and was sold and delivered by the freeholders of that township to the plaintiff, in 1865. The plaintiff deposited it in the Third National Bank of Baltimore, from which it was feloniously stolen, in 1872. It subsequently came to the possession of one Columbaur, by whom it was sold and delivered to Loder, who sold and delivered it to Kennedy, the defendant. The blanks left in the printed bond were not filled up when produced at the trial.

The cause was tried by the court, a jury being waived, and resulted in a finding for the defendant, on which this rule to show cause was granted.

Argued at June Term, 1875, before the CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the rule, *Dixon.*

*Contra, Leon Abbett.*

The opinion of the court was delivered by

DEPUE, J. Coupon bonds of a corporation issued under legislative authority, and intended as the means of raising money on a credit, if they contain words of a negotiability, are negotiable in the same way as promissory notes. If payable to bearer, they are negotiable by delivery. *Morris Canal* v. *Fisher*, 1 *Stockt.* 667 ; *Morris Canal* v. *Lewis*, 1

*Beas.* 323. The title of the purchaser of such a security for a valuable consideration, has all the qualities of the title of the holder of ordinary commercial paper, under the same circumstances. It will not be defeated by the want of title of the vendor from whom he purchases, unless actual fraud be shown in the party making the purchase. *Mercer Co.* v *Hacket,* 1 *Wall.* 83 ; *Murray* v. *Lardner,* 2 *Wall.* 110 ; *Welch* v. *Sage,* 47 *N. Y.* 143 ; *Seybel* v. *National Currency Bank,* 54 *N. Y.* 288 ; *Dutchess Co. Ins. Co.* v. *Hachfield,* 2 *N. Y. Sup. Ct. Rep.* 158 ; *Morris Canal* v. *Lewis, supra.* The numerous cases on this subject are cited in 1 *Dillon on Munic. Corp.,* § 405, *n,* and in 3 *Kent* (12 *ed.*) 89, *n.*

The contention in behalf of the plaintiff was, that this bond having been issued with a blank for the name of the payee, did not possess the quality of negotiability which attaches to a completed instrument. This question is presented under circumstances most favorable for the defendant. The obligors are not before the court setting up the incompleteness of the bond in avoidance of its obligation. Both parties make title on the assumption that the bond is valid. Neither claims under a delivery immediately by the commissioners, who alone were authorized to make and issue the bonds.

In *Texira* v. *Evans,* cited in *Master* v. *Miller,* 1 *Anstrother* 228, the defendant wanting to raise £400, or so much thereof as his credit would procure him, executed a bond with blanks for the name of the payee, and the sum, and gave it to his agent to raise the money. The plaintiff lent £200 on it, and the agent filled up the blanks with that sum, and the plaintiff's name, and delivered the bond to him. On *non est factum* pleaded, Lord Mansfield held it to be a good deed. This case was overruled in *Hibblewhite* v. *McMorine,* 6 *M. & W.* 200, where it was held, under a statute requiring the conveyance of shares of a joint stock corporation to be by deed, that an instrument of transfer under seal, with a blank for the name of the purchaser, was void. On the authority of the latter case, the law may now be considered

as settled, in England, that a bond executed with a blank for the name of the payee, is void. *Enthoven* v. *Hoyle*, 13 *C. B.* 373; *Squire* v. *Witton*, 1 *H. of L. Cases* 333. A different rule prevails there, in respect of ordinary commercial paper, and it has been held that a bill of exchange drawn with a blank for the name of payee, may be filled up by any *bona fide* holder with his own name, and will bind the drawer. *Crutchley* v. *Clarence*, 2 *M. & S.* 90.

The reason assigned in *Hibblewhite* v. *McMorine* for over-ruling *Texira* v. *Evans*, and re-establishing the technical rule of the common law—that the authority of an agent to fill a blank in an instrument under seal, and thus make it the valid deed of his principal, must be conferred by deed—was that the contrary doctrine would make a deed transferable and negotiable like a bill of exchange or exchequer bill, which the law did not permit. This decision was prompted by considerations of a public policy, which, it was supposed, forbid that obligations under seal should be put on the same footing as ordinary commercial paper, in their negotiability.

A different opinion of the requirements of public policy is entertained by the courts of this state, and generally throughout the United States. Corporations have been authorized to issue bonds for large amounts, whereon to procure loans, and provide funds for present use, to be repaid on long credits. To accomplish this purpose, it is necessary to put these bonds on the market. A ready negotiation of such securities is needed to promote their circulation, and thereby give them increased value, for the purpose of the investment of money. Consequently, such securities, by common usage, sanctioned by the courts, have obtained the qualities and attributes of negotiable paper, in respect to their transfer. Under such circumstances, the reason on which *Hibblewhite* v. *McMorine* is based, is not only inapplicable, but is furthermore inconsistent with the qualities with which such paper has become invested.

In *White* v. *The Vt. & Mass. R. R. Co.*, 21 *How.* 575, the Supreme Court of the United States decided that a bond

issued by a railroad corporation, payable in blank—no payee being inserted—and sold in the market, might be filled up by a holder, to whom it had passed, through several intervening holders, by inserting his own name, and a suit be maintained by him on it. In *Brainerd* v. *The N. Y. & H. R. R. Co.*, 25 *N. Y.* 496, a bond issued by a corporation to A. B. or his assigns, was delivered by the payee with an assignment in blank. It was held that a blank assignment, signed by the payee, was a sufficient transfer, and that the plaintiff was entitled to insert his own name in the blank. In *Hubbard* v. *N. Y. & H. R. R. Co.*, 36 *Barb.* 286, in an action on a bond payable to . . . . . or his assigns, it was held that any lawful holder, by transfer or delivery, might fill in his name as payee, and bring an action on it. In *Dutchess County Ins. Co.* v. *Hachfield*, 4 *N. Y. Sup. Ct. Rep.* 158, the controversy was between the rightful owner of a bond, payable to . . . . . or his executors, administrators or assigns, from whom it had been feloniously stolen, and the subsequent purchaser. It was held that the instrument, in that form, was negotiable paper, and that a subsequent *bona fide* purchase would give good title against the former owner.

The principal adopted in these cases inevitably results from the doctrine that such securities, for the purpose of negotiation, have the attributes of commercial paper, and is necessary to carry into effect the intent of the obligors.

In the present instance, the sum for which the issue was authorized, was quite large. It was divided up into lesser amounts, to promote the negotiation of the bonds which were made payable at a distant period of time. It must have been contemplated that these bonds might pass through many hands before maturity. By issuing them in blank, it was plainly the intent of the obligors to make themselves the debtors to any person to whose hands they might come, and it may fairly be presumed that they consented that any *bona fide* holder might perfect his contract by inserting his name in the space left for that purpose. *Chapin* v. *V. & M. R. R. Co.*, 8 *Gray* 575. The authority to complete the instrument and make it what it was intended to be—a valid security—

is implied from the act of the obligors in putting the instrument in circulation. *Ledwich* v. *McKim*, 53 *N. Y.* 307.

The court found that both Kennedy and Loder were *bona fide* holders. This finding is fully justified by the testimony as to Loder. He bought the bond in the usual course of business, for a valuable consideration. There is nothing in proof to impeach the *bona fides* of the transaction by which he acquired it. The title he acquired was transmitted to Kennedy.

The result below was right, and the rule to show cause should be discharged.